**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHERINE COFFMAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>VECTRUS, INC., CHARLES PROW, LOUIS J. GIULIANO, BRADFORD J. BOSTON, MARY L. HOWELL, WILLIAM F. MURDY, MELVIN F. PARKER, ERIC M. PILLMORE, STEPHEN L. WAECHTER, and PHILLIP C. WIDMAN,<br><br>　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Catherine Coffman ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Vectrus, Inc. ("Vectrus" or the "Company") and the members of Vectrus's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Vectrus with Vertex Aerospace Services Holding Corp. ("Vertex") (the "Proposed Transaction").

2. On March 7, 2022, Vectrus entered into an Agreement and Plan of Merger with Vertex and Vectrus's direct, wholly owned subsidiaries, Andor Merger Sub Inc. ("Merger Sub Inc.") and Andor Merger Sub LLC ("Merger Sub LLC") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Vectrus and Vertex will combine in an all-stock transaction, with the Company issuing additional shares of Vectrus common stock to Vertex stockholders as merger consideration (the "Share Issuance"). Following the completion of the Proposed Transaction, Vertex shareholders will own approximately 62% of the combined company on a fully diluted basis, and Vectrus shareholders will own approximately 38%.

3. On May 9, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Vectrus stockholders vote their shares in favor of the Share Issuance and Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for Vectrus, Vertex and the pro forma combined company; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Vectrus stockholders need such information in order to make a fully informed decision in connection with the Share Issuance and Proposed Transaction.

5. The special meeting for Vectrus stockholders to vote on the Share Issuance and Proposed Transaction is currently scheduled for June 15, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Vectrus's other shareholders

to make an informed decision whether to vote their shares in favor of the Share Issuance and Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Vectrus common stock.

10. Defendant Vectrus is an Indiana corporation, with its principal executive offices located at 2424 Garden of the Gods Road, Colorado Springs, Colorado 80919. Vectrus's shares trade on the New York Stock Exchange under the ticker symbol "VEC."

11. Defendant Charles Prow has been President, Chief Executive Officer, and a director of the Company at all relevant times.

12.     Defendant Louis J. Giuliano has been Non-Executive Chairman and a director of the Company at all relevant times.

13.     Defendant Bradford J. Boston has been a director of the Company at all relevant times.

14.     Defendant Mary L. Howell has been a director of the Company at all relevant times.

15.     Defendant William F. Murdy has been a director of the Company at all relevant times.

16.     Defendant Melvin F. Parker has been a director of the Company at all relevant times.

17.     Defendant Eric M. Pillmore has been a director of the Company at all relevant times.

18.     Defendant Stephen L. Waechter has been a director of the Company at all relevant times.

19.     Defendant Phillip C. Widman has been a director of the Company at all relevant times.

20.     Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Vectrus is an American defense contractor. The Company offers facility and base operations services, such as facilities operations and maintenance, security, base life support, facilities engineering and management, airfield management, civil engineering, public works, transportation operations, and emergency services. It also offers supply chain and logistics

services, including warehouse management and distribution, asset management and logistics, integrated logistics, supply chain as a service, full spectrum aviation maintenance, repair and overhaul, and equipment maintenance, repair, and services. In addition, Vectrus provides information technology ("IT") mission support services comprising communications, management and service support, IT service management design and implementation, network and cybersecurity, systems installation and activation, and mission support. The Company also offers engineering and digital integration solutions.

**The Proposed Transaction**

22. On March 7, 2022, Vectrus announced that it had entered into the Proposed Transaction, stating, in relevant part:

> COLORADO SPRINGS, Colo. And MADISON, Miss., March 7, 2022 -- Vectrus, Inc. (NYSE: VEC) and The Vertex Company ("Vertex") today announced that they have entered into an all-stock merger to create a leading global provider of mission-essential solutions.
>
> The combined company will offer significantly expanded technology and service capabilities, delivering a comprehensive suite of integrated solutions and critical service offerings to support national security readiness and modernization initiatives around the world. As U.S. and allied government clients move toward a converged environment, the combined company will be well positioned to meet the mission-essential requirements of its clients while delivering cost savings, increased security and resiliency, and more strategic use of resources.
>
> Together, the combined company would have 2021 pro forma revenue of approximately $3.4 billion and adjusted EBITDA of approximately $283 million, inclusive of $20 million of estimated cost synergies, resulting in an adjusted EBITDA margin of more than 8%. With pro forma backlog of approximately $11.3 billion, the company has high revenue visibility and will benefit from increased scale, balance and diversity. With significant cash flow generation and a strong balance sheet, the combined company will retain flexibility for continued growth.
>
> "The combination of Vectrus and Vertex will create a stronger, more diversified company and one of the leading providers of critical mission solutions and support to defense clients globally," said Chuck Prow, Chief Executive Officer of Vectrus. "This highly strategic transaction builds on both companies' accomplishments over the last several years and significantly accelerates our ability to deliver converged

solutions while providing enhanced value for our shareholders and other stakeholders."

Prow continued, "With increased scale and meaningful synergies, the combined company will be more competitive in the national security environment while enhancing the delivery of services to our federal clients. We look forward to combining the strengths of our businesses and teams to build upon both companies' proud track records of providing critical mission support for our clients' toughest operational challenges."

Ed Boyington, President and CEO of Vertex, said, "Vertex and Vectrus share mission-oriented foundations and cultural alignment. By joining forces with Vectrus, we will be better positioned to help the Department of Defense and government agencies achieve their objectives, and in the process, create a stronger organization with greater career development and advancement opportunities for our employees. On behalf of the Vertex team, we remain dedicated to our clients' missions, and we are very pleased to enter this new phase of growth as a combined company."

**Creating a Differentiated Industry Leader**

- *Greater Scale and Improved Competitive Positioning* – The combination creates a stronger company with greater scale and enhanced ability to compete for more integrated business opportunities. The company will benefit from a more diversified revenue base across geographies, clients, and contract types in supporting missions for the U.S. Department of Defense and other government agencies. The combined company's contract portfolio will also be more balanced across all agencies served.
- *Enhanced Portfolio of Technologies and Solutions* – The combined company will be uniquely positioned to better provide full life-cycle support to the most critical and enduring missions. The complementary breadth of capabilities builds on each company's leading position in their respective markets.
- *Attractive Financial Profile and Efficient Capital Structure* –The transaction is expected to be accretive to Vectrus's adjusted diluted earnings and free cash flow per share in the first full year following close. The combined company will have significant revenue visibility and expects to generate substantial free cash flow and a pro forma adjusted EBITDA margin profile of more than 8% initially, with plans to improve margins going forward. The combined company will maintain its low capital expenditure business model and benefit from significant tax attributes, allowing for rapid debt reduction. The company will target long-term net debt to EBITDA of 2.0 to 3.0x.
- *Clearly Identified Cost Synergies and Incremental Revenue Opportunities* – The combined company is expected to achieve approximately $20 million in annualized pre-tax net cost synergies by 2024 through efficiencies in supply chain and contract management, shared IT infrastructure, business systems right-sizing, and general corporate costs. The

combined capabilities also will create meaningful incremental revenue growth opportunities across the company's key addressable markets in operations and logistics, aerospace, training, and technology.

**Transaction Terms**

Under the terms of the merger agreement, Vertex shareholders will own approximately 62% of the combined company on a fully diluted basis, while Vectrus shareholders will own approximately 38%. The transaction implies a value for Vertex of approximately $2.1 billion, or approximately 9.5x 2021 adjusted EBITDA net of $20 million of cost synergies and the present value of Vertex's existing tax attributes of approximately $160 million.

**Leadership and Governance**

Upon closing of the transaction, Mr. Prow, CEO of Vectrus, will serve as CEO of the combined company, and Susan Lynch, CFO of Vectrus, will serve as CFO. The broader leadership team will be comprised of executives from both companies.

The combined company's Board of Directors will be comprised of 11 members, six directors from the current Vectrus board, including Mr. Prow, and five directors appointed by Vertex, including Mr. Boyington, President and CEO of Vertex. An independent member of the current Vectrus Board of Directors will serve as Chairman. The combined company plans to announce the members of the Board of Directors prior to closing.

The combined company will introduce a new name post-closing and will maintain its listing on the NYSE. The company will be headquartered in Northern Virginia, with a significant operating presence maintained in other key locations in the U.S. and around the world.

**Shareholder Rights**

At closing of the transaction, Vectrus will enter into a shareholders agreement containing certain rights and other terms relating to American Industrial Partners Capital Fund VI LP (AIP) shareholdings following the transaction, including board designation rights that adjust as AIP and the other Vertex shareholders reduce their ownership. Other terms include, among other things, that AIP will be subject to a standstill agreement for so long as it retains board designation rights and that AIP and Vertex's other shareholders will be subject to a six-month lockup agreement and thereafter will have customary registration rights.

**Financing and Approvals**

The merger, which was unanimously approved by the Vectrus Board of Directors, is expected to close in the third quarter of 2022, subject to satisfaction of customary

closing conditions, including receipt of regulatory and Vectrus shareholder approvals.

Vertex's capital structure will remain in place and the companies anticipate refinancing Vectrus's existing debt as part of an upsized Vertex debt capital structure at close.

**The Materially Incomplete and Misleading Proxy Statement**

23. On May 9, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Vectrus stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Vectrus, Vertex and the pro forma combined company; and (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Vectrus, Vertex and the Pro Forma Combined Company*

24. The Proxy Statement fails to disclose material information concerning the financial projections for Vectrus, Vertex and the pro forma combined company.

25. Specifically, with respect to each of the "Vectrus Standalone Forecasted Financial Information," the "Vertex Standalone Forecasted Financial Information," and the "Pro Forma Combined Company Forecasted Financial Information," the Proxy Statement fails to disclose the line items underlying the calculation of: (i) Adjusted EBITDA; and (ii) Unlevered free cash flow.

*Material Misrepresentations and/or Omissions Concerning Goldman's Financial Analyses*

26. The Proxy Statement fails to disclose material information concerning Goldman's financial analyses.

27. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Vectrus Standalone*, the Proxy Statement fails to disclose a quantification of: (i) the terminal year EBITDA; (ii) the terminal values for Vectrus; (iii) the inputs and assumptions underlying the discount rate range of 7.5% to 8.5%; (iv) Vectrus's net debt; and (v) the number of fully diluted outstanding shares of Vectrus common stock.

28. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Vectrus Pro Forma*, the Proxy Statement fails to disclose a quantification of: (i) the terminal year EBITDA; (ii) the terminal values for Vectrus on a pro forma basis; (iii) the inputs and assumptions underlying the discount rate range of 7.0% to 8.0% for Vectrus on a pro forma basis and 7.5% for Vertex's future tax benefits; (iv) the estimated value of Vertex's future tax benefits; (v) the pro forma net debt of Vectrus; and (vi) the pro forma number of fully diluted outstanding shares of Vectrus common stock.

29. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Vectrus Standalone*, the Proxy Statement fails to disclose a quantification of: (i) Vectrus's one-year forward EBITDA as of December 31 for each of the fiscal years 2023 to 2025; (ii) Vectrus's projected net debt as of December 31, 2023, 2024, and 2025; (iii) the number of fully diluted shares of Vectrus common stock outstanding; and (iv) the inputs and assumptions underlying the discount rate of 8.75%.

30. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Vectrus Pro Forma*, the Proxy Statement fails to disclose a quantification of: (i) the one-year forward EBITDA as of December 31 for each of the fiscal years 2023 to 2025 for Vectrus on a pro forma basis; (ii) Vectrus's projected net debt on a pro forma basis as of December 31,

2023, 2024, and 2025; (iii) the number of fully diluted shares of Vectrus outstanding; and (iv) the inputs and assumptions underlying the discount rate of 8.75%.

31. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information Utilized by Our Board and Financial Advisor" and "Opinion of Vectrus' Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Vectrus will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Vectrus**

32. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Vectrus is liable as the issuer of these statements.

34. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

35. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

37. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

38. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Vectrus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Vectrus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

11

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

44. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Vectrus, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction,

including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 25, 2022                                  **ACOCELLI LAW, PLLC**

                                                      By  */s/ Richard A. Acocelli*
                                                          Richard A. Acocelli
                                                          33 Flying Point Road, Suite 131
                                                          Southampton, NY 11968
                                                          Tel: (631) 204-6187
                                                          Email: racocelli@acocellilaw.com

                                                          *Attorneys for Plaintiff*

13